TO PLAINTIFF'S ATTORNEY: PLEASE CIRCLE TYPE OF ACTION INVOLVED: —
TORT — MOTOR VEHICLE TORT — CONTRACT —
EQUITABLE RELIEF — OTHER

## COMMONWEALTH OF MASSACHUSETTS

SUPERIOR COURT
DEPARTMENT
OF THE
TRIAL COURT
CIVIL ACTION
No. 10-4168

MIDDLESEX .............. , ss

JAY STEINMETC, ET AL , Plaintiff(s)

v.

BEAVEX INCORPORATED and
MARK TUCHMANN , Defendant(s)

## SUMMONS

To the above-named Defendant:  Beavex Incorporated

You are hereby summoned and required to serve upon .... Harold L. Lichten, Esquire ..............
Lichten & Liss-Riordan, PC plaintiff's attorney, whose address is 100 Cambridge Street
20th Floor, Boston, MA 02114 .........................., an answer to the complaint which is herewith

served upon you, within 20 days after service of this summons upon you, exclusive of the day of service. If you

fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You are also

required to file your answer to the complaint in the office of the Clerk of this court at .. 200 TradeCenter ......

... Woburn, MA 01801 ................................. either before service upon plaintiff's attorney or within a

reasonable time thereafter.

Unless otherwise provided by Rule 13(a), your answer must state as a counterclaim any claim which you may

have against the plaintiff which arises out of the transaction or occurrence that is the subject matter of the plaintiff's

claim or you will thereafter be barred from making such claim in any other action.

Witness, **Barbara J. Rouse**, Esquire, at ............................................................................................

the ...................................... day of ..............................................................................................

........................., in the year of our Lord ........................................... .

A true copy attest:

Deputy Sheriff Suffolk County

Clerk

NOTES.
1. This summons is issued pursuant to Rule 4 of the Massachusetts Rules of Civil Procedure.
2. When more than one defendant is involved, the names of all such defendants should appear in the caption. If a separate summons is used
for each defendant, each should be addressed to the particular defendant.

FORM NO. SUP. — 001

NOTICE TO DEFENDANT - You need not appear personally in court to answer the complaint, but if you claim to have a defense, either you or your attorney must serve a copy of your written answer within 20 days as specified herein and also file the original in the Clerk's Office.

## PROOF OF SERVICE OF PROCESS

I hereby certify and return that on ................................................................................
20........., I served a copy of the within summons, together with a copy of the complaint in this action,
upon the within-named defendant, in the following manner (See Mass. R. Civ. P. 4 (d) (1-5)):

................................................................................................................................

................................................................................................................................

................................................................................................................................

.................................................................................

Dated: ........................................................................................., 20..........

**N.B.  TO PROCESS SERVER:**
   **PLEASE PLACE DATE YOU MAKE SERVICE ON DEFENDANT IN THIS BOX**
   **ON THE ORIGINAL AND ON COPY SERVED ON DEFENDANT.**

( _____ )

( ................................................................, 20.......... )

( _____ )

COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX .....ss.

SUPERIOR COURT
DEPARTMENT
OF THE
TRIAL COURT
CIVIL ACTION
No. 10-4168

Jay Steinmetz, et al ...............Plff.

v.

Beavex Incorporated and Mark .........Deft.
Tuchmann

SUMMONS
(Mass. R. Civ. P. 4)

1603350

COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, SS.

Superior Court Dept.
Civil Action No. _____ 10-4168

RECEIVED NOV 0 4 2010

COPY



JAY STEINMETZ, *et al.*, individually and
on behalf of all others similarly situated,

      Plaintiff,

v.

BEAVEX INCORPORATED and MARK
TUCHMANN,

      Defendants.

FILED
IN THE OFFICE OF THE
CLERK OF COURTS
FOR THE COUNTY OF MIDDLESEX
NOV 03 2010
CLERK

### CLASS ACTION COMPLAINT
### COMPENSATORY AND INJUNCTIVE RELIEF REQUESTED, AND JURY DEMAND

## I.   INTRODUCTION

    1.    This is an action challenging Defendants' unlawful misclassification of courier

drivers as independent contractors in violation of M.G.L. ch. 149, § 148B.  As a result of said

misclassification, Plaintiff, individually and on behalf of all others similarly situated, alleges that

he has had unlawful deductions taken from his pay, has borne expenses that should have been

borne by his employer, has not been paid for all hours worked, and has worked in excess of 40

hours per week without receiving overtime compensation as required by Massachusetts law.

## II.   PARTIES

    2.    Plaintiff Jay Steinmetz resides in Massachusetts and has worked for Defendant

BeavEx Incorporated as a courier driver from September 2007 through the present, primarily out

of the West Springfield, Massachusetts location.  As a term and condition of his employment,

BeavEx required Mr. Steinmetz to sign a Membership Application and Agreement with

1

Contractor Management Services (the "CMS Agreement") and an Independent Contractor Services Addendum with BeavEx (the "BeavEx Agreement"). Despite these agreements, BeavEx improperly, wrongfully and illegally classified Mr. Steinmetz as an independent contractor, when the economic reality of his position is that of an employee, and BeavEx retains the right to control, and, in fact, actually does control, his work. Mr. Steinmetz routinely works in excess of 40 hours per week, but as a result of his misclassification, BeavEx does not pay him overtime compensation as required by Massachusetts law. BeavEx has also improperly deducted various business-related costs and expenses from Mr. Steinmetz's paychecks.

3. Defendant BeavEx Incorporated ("BeavEx") is a Connecticut corporation with its corporate headquarters located at 3715 Northside Parkway, North Creek Building 200, Suite 300, Atlanta, Georgia 30327. BeavEx is a courier company. BeavEx operates an office at 333 Park Street, West Springfield, Massachusetts.

4. Defendant Mark Tuchmann ("Mr. Tuchmann") is the Founder and CEO of BeavEx, and actively manages BeavEx and its affairs.

## III.   JURISDICTION

5. The Court has personal jurisdiction over Plaintiff and the class he seeks to represent, who are citizens of the State of Massachusetts and/or work in the State of Massachusetts.

6. The Court has personal jurisdiction over Defendants BeavEx and Mark Tuchmann who do business in the State of Massachusetts. The conduct of their business in the State of Massachusetts underlies all claims in this suit.

7. Plaintiff and Class members claim individual damages not to exceed $75,000 per person and $5 million total for the Class.

2

## IV.   RELEVANT BACKGROUND

8.     By way of background, unfortunately, some employers across the United States have found that worker protection laws and tax laws can be avoided by entering into a "contract" relationship with their workers, even where the worker is providing personal services that are completely integrated into the employer's business and in fact constitute the "core" business of the employer.  This often occurs when employers ask their employees to sign a contract stating that they are an "independent contractor," and then have their employees obtain their own business license or insurance coverage.  In some industries, firms have even set up third party contracting services in an attempt to provide another layer of purported protection for what is in fact a complete sham.

9.     By these simple arrangements, employers attempt to avoid paying unemployment insurance, workers' compensation and social security taxes, and to escape the cost of withholding income taxes, since employers are not obligated to make these payments on behalf of true independent contractors.  For example, in 1994, it was estimated that proper classification of employees would increase tax receipts by $34.7 billion over the period 1996-2004.  *See* Projection of the Loss in Federal Tax Revenues Due to Misclassification of Workers, Coopers & Lybrand (1994) (now PriceWaterhouse Coopers).

10.     Workers classified as independent contractors also lack coverage under labor protective laws such as minimum wage, overtime, discrimination, health and safety, job-protected family and medical leave, and freedom of association laws.  *See* U.S. General Accountability Office, Employment Arrangements: Improved Outreach Could Help Ensure Proper Worker Classification, GAO-06-656 (July 2006), at 7, 25.

11.     Studies have shown that by falsely labeling employees as "independent

3

contractors," businesses stand to gain upwards of thirty percent (30%) of payroll and related taxes paid for "employees."[1] In addition, businesses that employ a misclassification scheme can underbid their competitors, especially in labor intensive sectors such as delivery services. This creates an unfair and uncompetitive marketplace. The GAO concluded in its July 2006 report that:

> employers have economic incentives to misclassify employees as independent contractors because employers are not obligated to make certain financial expenditures for independent contractors that they make for employees, such as paying certain taxes (Social Security, Medicare, and unemployment taxes), providing workers' compensation insurance, paying minimum wage and overtime wages, or including independent contractors in employee benefit plans.

Employment Arrangements: Improved Outreach Could Help Ensure Proper Worker Classification, GAO-06-656 (July 2006), at 25 ("GAO 06-656").

12.    By definition, an "independent contractor" is a person who is in business for him or herself. True independent contractors have a specialized skill; independently invest capital in their business; and perform a service that is not part of the receiving firm's overall business. *See* GAO 06-656, at 43. Examples are a plumber called in by an office manager to fix a leaky sink in the corporate bathroom, or a computer technician on a retainer with a shipping and receiving company to trouble-shoot software glitches. As the U.S. Department of Labor's Commission on the Future of Worker-Management Relations concluded, "[t]he law should confer independent

---

[1]    Several states have recently collected data on the costs of misclassifying employees as independent contractors. *See, e.g.*, Fiscal Policy Institute, "*New York State Workers Compensation: How Big is the Shortfall?*" (January 2007) (New York); Michael Kelsay, James Sturgeon, Kelly Pinikham, "*The Economic Costs of Employee Misclassification in the State of Illinois*" (Dept. of Economics: University of Missouri-Kansas City: December 2006) (Illinois); Peter Fisher, et al., "*Nonstandard Jobs, Substandard Benefits*," Iowa Policy Project (July 2005) (Iowa); State of Maine, "*Annual Report on the Status of the Maine Workers' Compensation System*," Submitted to the Legislature, February 2005) (Maine); Francois Carre, J.W. McCormack, "*The Social and Economic Cost of Employee Misclassification in Construction* (Labor and Worklife Program, Harvard Law School and Harvard School of Public Health: December 2004) (Massachusetts).

contractor status only on those for whom it is appropriate – entrepreneurs who bear the risk of loss, serve multiple clients, hold themselves out to the public as an independent business, and so forth. The law should not provide incentives for misclassification of employees as independent contractors, which costs federal and state treasuries large sums in uncollected social security, unemployment, personal income, and other taxes." U.S. Department of Labor, Commission on the Future of Worker-Management Relations (1995).

13.    The illegal practice of misclassifying employees as independent contractors is pervasive. In 2000, the U.S. Department of Labor commissioned a study and found that up to 30% of firms misclassify their employees as independent contractors. *See* Lalith de Silva et al., *Independent Contractors: Prevalence and Implications for Unemployment Insurance Programs* i-iv, prepared for U.S. Department of Labor, Employment and Training Division by Planmatics, Inc.

14.    This case is a prime example of the misclassification of workers as independent contractors pursuant to agreements that mock the tests that have been designed to determine employee status. During the time period relevant to this Complaint, Defendants have maintained a uniform policy and practice of misclassifying BeavEx's Massachusetts courier drivers as independent contractors instead of employees.

15.    As a result of Defendants' illegal scheme to misclassify BeavEx's Massachusetts courier drivers, Plaintiff and the Class are entitled to, *inter alia*: a) a declaration that they are employees; b) rescission of their contract with BeavEx which is illegal and violates public policy and is therefore void; and c) damages based on Defendants' violations of Massachusetts state law as set forth herein.

16.    Plaintiff and the Class seek injunctive and declaratory relief and monetary

damages to redress the deprivation of rights secured to them under the laws of the State of Massachusetts.

## V.  FACTS

### The Contracts

17.    As a condition of employment, BeavEx requires its Massachusetts courier drivers to sign lengthy form contracts and execute statements labeling them as "independent contractors." These contracts are designed to conceal the true nature of the relationship between BeavEx and its Massachusetts courier drivers – that of employer and employee.

18.    In order to obtain his employment, BeavEx required Plaintiff to sign:  a) a "Membership Application and Agreement" (the "CMS Agreement") with a third party, Contractor Management Services ("CMS"); and b) an "Independent Contractor Services Addendum" (the "BeavEx Agreement") with BeavEx (together the CMS Agreement and BeavEx Agreement are referred to hereafter as the "Contracts").

19.    CMS's website homepage (http://www.ictherightway.com) features a picture of a driver/courier and states that it is "the leading full-service consulting firm for companies utilizing Independent Contractors," and that it "specializes in the transportation industry, providing compliance, settlement processing and benefit solutions that deliver measurable advantages to both company owners and Independent Contractors."

20.    CMS's website, under the page marked "About Us," states:

> *CMS provides an environment of secure protection to shield your company from the risks associated with independent contracting*. Getting it "almost right" could cost you thousands of dollars. The only way to handle Independent Contractors is "The Right Way". CMS is the only partner that goes the extra mile to ensure that your business *will reap the benefits of contracting without headaches and unnecessary costs*.

21.    Upon information and belief, CMS was formed and designed for the purpose of

assisting courier companies such as BeavEx to misclassify their drivers as independent contractors in order to decrease company costs and deprive workers of their rights and benefits as employees, as well as to defraud federal and state governments of large amounts in unpaid taxes that companies following the law are required, and do, pay.

22.     Plaintiff had to sign the CMS Agreement as a term and condition of his employment with BeavEx.

23.     . The CMS Agreement and BeavEx Agreement are contracts of adhesion.

24.     The Contracts are written in highly technical and confusing language, with misleading section headings and provisions regarding waivers of important rights buried within the agreements.

25.     The Contracts purport to create the legal fiction that BeavEx's drivers are independent contractors.

26.     The Contracts are standard form contracts, imposed on Plaintiff and the Class as a term and condition of their employment at the outset of their employment.

27.     Plaintiff and the Class have little or no bargaining power to negotiate the terms of the Contracts.

28.     The Contracts flaunt Massachusetts state law regarding the misclassification of employees as independent contractors.

### BeavEx Retains The Right To Control The Work Performed By Plaintiff And The Class

29.     Despite using the label of "independent contractor," the terms of the Beavex Agreement and other documents disseminated by BeavEx show that BeavEx has the absolute right to control and direct its courier drivers, not only as to the results to be accomplished by the work, but also as to the details and means by which that result is accomplished, including the

time, method and manner of performance.

30.     For example, despite stating that the drivers are "independent contractors" and that BeavEx has no authority to "supervise, control, direct or oversee the performance of Contractor's services," the BeavEx Agreement explicitly permits BeavEx to supervise, control, direct and oversee the courier drivers' performance by permitting BeavEx the right to discipline or terminate the courier drivers at will, as would an employer, based on the commission of a "major breach" or two "minor breaches."

31.     The BeavEx Agreement is structured to replicate the employer and employee relationship under the guise of an independent contractor relationship.

32.     Plaintiff and the Class are also subject to rules or policies of BeavEx that are not set forth in the Contracts, and, at Defendants' whim, may be adopted in the future at any time.

33.     In fact, Defendants routinely impose new rules and policies that govern BeavEx's employment relationship with Plaintiff and the Class, including, just for example:

    a.     Penalties for failure to wear a uniform or badge;

    b.     Penalties for failure to provide manifests with delivery bags;

    c.     Penalties for failure to scan a location;

    d.     Unilateral changes of BeavEx's rate of pay to Plaintiff and the Class; and

    e.     Vendor fuel surcharges.

34.     Plaintiff and the Class have little or no authority to refuse or negotiate Defendants' rules and policies; they must comply or risk discipline and/or termination.

<u>**BeavEx Actually Controls The Work Performed By Plaintiff And The Class**</u>

35.     In addition to reserving the right to control the work performed by its courier drivers, BeavEx, in fact, does exercise control over the method and manner in which Plaintiff and the Class perform their labor for BeavEx.

8

36.    BeavEx instructs its drivers concerning how to do their work and dictates the
details of the performance of their jobs.  For example:

    a.  Plaintiff and the Class are required to wear BeavEx uniforms at all times and
to post a BeavEx sign on or in their vehicle;

    b.  Plaintiff and the Class have no authority to refuse pick-ups or deliveries on
their assigned route;

    c.  Plaintiff and the Class must arrive at pick-up and drop-off locations at precise
times;

    d.  Plaintiff and the Class are not permitted to make deliveries or pick-ups
according to their own schedules;

    e.  Plaintiff and the Class are not permitted to vary the schedules set by BeavEx;

    f.  Plaintiff and the Class must provide daily reports of deliveries made;

    g.  BeavEx employs dispatchers to coordinate and issue the paperwork, delivery
and pick-up schedules for Plaintiff and the Class.  Plaintiff and the Class are
required to adhere to these schedules;

    h.  Plaintiff and the Class must check in with the BeavEx dispatcher before and
after every run, and must report electronically to BeavEx throughout the day;

    i.  BeavEx's dispatcher acts as the supervisor for Plaintiff and the Class;

    j.  BeavEx, not Plaintiff or the Class, conducts all of the billing and invoicing to
BeavEx's customers for the drivers' work.  BeavEx bills the third-party
customers directly, and Plaintiff and the Class have no control over whom to
deliver packages to, what prices to charge, or what times to make such
deliveries.  All negotiations over the cost of the delivery are done directly

9

between BeavEx and the third-party customer;

k.  If Plaintiff and the Class are not able to drive a route during a particular day, they must find a replacement or substitute who is approved by BeavEx;

l.  All drivers for BeavEx must complete a qualification process with BeavEx, which includes a detailed background check and drug screen.  BeavEx requires that all persons in contact with any of its customers, including any replacement driver, must go through the same qualification process;

m.  If Plaintiff and the Class fail to qualify any substitute drivers, BeavEx reserves the right to terminate them;

n.  BeavEx requires Plaintiff and the Class, at their sole cost and expense, to maintain their vehicles in accordance with BeavEx's standards and to submit to BeavEx proof of timely maintenance and inspection of such vehicles; and

o.  BeavEx makes unannounced "audits" and inspections upon Plaintiff and the Class to ensure constant and uniform compliance with its policies, directions, rules and procedures.  Failure to comply with an audit or inspection can result in termination.

37.     BeavEx has, through the guise of the BeavEx Agreement, shifted certain capital costs to Plaintiff and the Class while retaining behavioral and financial control over them in the same way it would over any of its employees.

38.     The behavioral and financial control manifested by Defendants over Plaintiff and the Class further demonstrates that the workers are employees rather than independent contractors.

## Defendants' Financial Incentives To Misclassify Plaintiff And The Class

39.     Defendants have intentionally misclassified Plaintiff and the Class to avoid BeavEx's obligations under Massachusetts law.

40.     BeavEx saves thousands of dollars in avoiding expenses associated with its core business by deducting these amounts from the pay checks of Plaintiff and the Class.  BeavEx has determined that it can shift expenses that it would ordinarily have to pay to its employees.

41.     For example, BeavEx deducts various charges and fees from the pay checks of Plaintiff and the Class, including, without limitation:

    a.   HNO fees (the cost of insurance which is required by BeavEx of Plaintiff and the Class and provided automatically by CMS);

    b.   CMS fees;

    c.   Handheld data and other equipment fees; and

    d.   Cargo fees.

42.     The sums deducted by BeavEx (or at the control or direction of BeavEx) from the pay checks of Plaintiff and the Class are not for the benefit of Plaintiff and the Class, but rather, are for the benefit of Defendants and BeavEx's business.

43.     Although Plaintiff and the Class frequently are required, permitted or encouraged to work more than 40 hours per week, they do not receive one and one-half times their regular rate for hours worked in excess of 40 hours per week, as required by the laws of the State of Massachusetts.

44.     BeavEx denies that Plaintiff and the Class are eligible for unemployment payments when they lose their jobs.

45.     Also, because of the misclassification, Plaintiff and the Class are not covered by workers' compensation when they are injured on the job.

46.     Plaintiff and the Class must pay substantial sums of their own money for work-

related expenses, including, without limitation, the purchase or lease of vehicles and all costs for operating, insuring and maintaining those vehicles, equipment required by BeavEx, and communication devices and company uniforms required by BeavEx.

47.     Defendants' denial of legal wages, overtime compensation, reimbursement of work expenses, and other benefits of employment to Plaintiff and the Class, as set forth herein, is and has been, willful and deliberate.

## VI.   CLASS ACTION ALLEGATIONS

51.     Plaintiff brings this action as a class action pursuant to Massachusetts law on behalf of himself and the following class:

> all persons who have entered an Independent Contractor Services Agreement with BeavEx and who drove or who currently drive a vehicle on a full-time basis (meaning exclusive of time off for commonly excused employment absences) in the State of Massachusetts at any time during the relevant statutory period (the "Class").

52.     The members of the Class are so numerous that joinder of all members of the Class is impracticable.  Plaintiff believes that the Class numbers in the hundreds.

53.     Common questions of law and fact predominate in this action because the claims of all Class members are based on BeavEx's uniform policies and practices of misclassifying its drivers as independent contractors.  Common questions include, without limitation:

a.     Whether Plaintiff and the Class have been misclassified as independent

contractors by Defendants;

b.     Whether, through the BeavEx Agreement, Defendants retained the right to control

the work performed by Plaintiff and the Class;

c.     Whether, through its uniform policies and practices, Defendants retained the right

to control the work performed by Plaintiff and the Class;

12

d.      Whether, through its uniform policies and practices, Defendants exercised actual

control over the time, manner and/or method of the work performed by Plaintiff

and the Class;.

e.      The nature and extent of class-wide injury and the measure of damages therefore;

and

f.      The proper formula for calculating restitution, damages and penalties owed to

Plaintiff and the Class.

54.      Plaintiff's claims are typical of the claims of the Class in the following ways:  a)

Plaintiff is a member of the Class; b) Plaintiff's claims arise out of the same policies, practices

and course of conduct that form the basis of the claims of the Class; c) Plaintiff's claims are

based on the same legal and remedial theories as those of the Class and involve similar factual

circumstances; d) there are no conflicts between the interests of Plaintiff and the Class members;

and e) the injuries suffered by Plaintiff are similar to the injuries suffered by the Class.

55.      Plaintiff will fairly and adequately represent and protect the interests of the Class.

Plaintiff's counsel is competent and experienced in litigating class actions and other complex

litigation matters.

56.      Class certification of Plaintiff's claims is appropriate because the prosecution of

separate actions by individual class members would create a risk of inconsistent or varying

adjudications, which would establish incompatible standards of conduct for Defendants, and/or

because adjudications with respect to individual Class members would, as a practical matter, be

dispositive of the interests of non-party Class members.

57.      Class certification of Plaintiff's claims for injunctive, declaratory and/or other

equitable relief is appropriate because Defendant has acted or refused to act on grounds generally

applicable to the Class, making appropriate both declaratory and injunctive relief with respect to the Class as a whole.  The members of the Class are entitled to injunctive relief to end BeavEx's common and uniform practice of denying the Class the wages and other damages to which they are entitled.

58.     Class certification of Plaintiff's claims is also appropriate because questions of law and fact common to the Class predominate over questions affecting only individual members of the Class, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.  Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would entail. Furthermore, from a practical standpoint, the amounts at stake for many of the Class members are not great enough to enable them to maintain separate suits against Defendants.

59.     The Class is readily identifiable from BeavEx's own records.

60.     Without a class action, Defendants will retain the benefit of their wrongdoing and will continue an illegal course of action, which will result in further damage to Plaintiff and the Class.  Plaintiff envisions no difficulty in the management of this action as a class action, and actions similar to this case have been certified as class actions by other federal courts.

**COUNT I**
**(Declaratory Judgment pursuant to M.G.L. c. 231A)**

61.     Under the relevant laws of Massachusetts, Defendant has misclassified Plaintiff and Class Members as independent contractors rather than as employees; therefore, pursuant to Mass. Gen. L. c. 231A, this Court should issue a declaratory judgment establishing that Plaintiff and Class Members are or were employees of Defendant and that Plaintiff and Class Members

are or were therefore entitled to all the rights and benefits of employment pursuant to the laws of Massachusetts.

## COUNT II
### (Violation of Massachusetts Independent Contractor Law)

62.     The conduct of the Defendants as set forth above constitutes a violation of the Massachusetts independent contractor statute, M.G.L. ch. 149, §148B.  This claim is asserted pursuant to M.G.L. ch. 149, §150.

## COUNT III
### (Violation of Massachusetts Wage Law)

63.     By such conduct in forcing Plaintiff and Class members to bear costs incident to Defendants' business operations, Defendants violated Mass. Gen. Laws. c. 149 §§ 148 and 150 by making unlawful deductions and unlawfully requiring Plaintiff and Class members to pay improper set-offs against their wages.  Defendants also violated Mass. Gen. Laws. c. 149 §§ 148 and 150 and c. 151 § 1 for not paying Plaintiff and Class members for all time worked, including training time, and for withholding other wages owed, such as final paychecks and vacation pay.

## COUNT IV
### (Overtime Violations)

64.     Plaintiff hereby incorporates the foregoing paragraphs by reference as if fully set forth herein, and allege that Defendants violated Plaintiff and Class members' right to be paid overtime for all work performed in excess of 40 hours per week, in violation of M.G.L. ch.151, §1A.  This claim is brought under M.G.L. ch.151, § 1B.

## COUNT V
### (Unjust Enrichment)

65.     As a result of Defendants' conduct in misclassifying Plaintiff and Class members as independent contractors, Defendants have forced Plaintiff and Class members to bear the normal costs and incidents of Defendants' business and have thus unjustly enriched themselves

to the detriment of Plaintiffs and Class members in violation of the common law of Massachusetts.

## COUNT VI
### (Conversion)

66.     By such conduct in forcing Plaintiff and Class members to bear costs incident to Defendants' business operations, Defendants also converted the property of Plaintiff and Class members to Defendants' own use in violation of the common law of Massachusetts.

## COUNT VII
### (Quantum Meruit)

67.     Plaintiff and Class members have been deprived by Defendants of the fair value of their services and are thus entitled to recovery in *quantum meruit* pursuant to the common law of Massachusetts.

## COUNT VIII
### (Rescission of the BeavEx Agreement)

68.     Despite the express terms of the BeavEx Agreement, Plaintiff's and Class members' relationships with Defendants satisfy every aspect of the test for employment and not for independent contractor status.

69.     Defendants control virtually every aspect of Plaintiff's and Class members' work and earnings, as set forth in the general allegations above.

70.     Despite this control and the actual status of the drivers as employees, Defendants mischaracterizes Plaintiff and Class members as independent contractors.  As a result, these courier drivers must pay substantial sums of their own money for work-related expenses, including but not limited to the purchase or lease of vehicles meeting company specifications, and all costs of operating, insuring and maintaining those vehicles.

71.     The BeavEx Agreement illegally and unfairly advantages Defendants, by mischaracterizing the status of the Plaintiff and Class members in that Defendants evade employment related obligations, such as workers' compensation coverage, and state disability and unemployment compensation, illegally shifting the expense of workers' compensation coverage and other such expenses to Plaintiff and Class members.

72.     The BeavEx Agreement is void as against public policy and therefore unenforceable, as failing to recognize the employment status of Plaintiff and the Class members, and therefore denying them the legally cognizable benefits of employment.

73.     The BeavEx Agreement is an unconscionable contract of adhesion, which is unenforceable as contrary to the public interest, policy and law.

74.     TheBeavEx Agreement illegally shifts the burden of certain costs that an employer must pay.

75.     While acting on the direct instruction of Defendants and discharging their duties for Defendants, Plaintiff and the Class members incurred expenses for, *inter alia*, the purchase or lease, maintenance, operating costs and adornment of vehicles; insurance; and uniforms. Plaintiff and Class members incurred these substantial expenses as a direct result of performing their job duties.

76.     By misclassifying its employees as "independent contractors," and further by contractually requiring those employees to pay Defendants' own expenses, Defendants have been unjustly enriched.

77.     As a direct and proximate result of Defendants' conduct, Defendants have received substantial benefits to which it had no entitlement, at Plaintiff and the Class members' expense, including lost profits, self-employment taxes, premiums for insurance to replace

workers compensation and disability benefits, business expenses, compensation of replacement workers, and other expenses.

78.    Plaintiff and Class members are entitled to compensation for all of the business expenses they were illegally required by Defendants to bear, as well as to the quantum meruit value of their services as employees.

**COUNT IX**
**(Injunctive Relief)**

79.    As Defendants have at all times continued to misclassify Plaintiff and Class members as independent contractors despite retaining control over them as employees, Plaintiff and Class members seek permanent injunctive relief enjoining Defendants from practicing the unlawful practices alleged herein

**JURY DEMAND**

Plaintiff, individually and on behalf of the Class, requests a trial by jury on all their claims.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests that this Court enter the following relief:

1.  Certification of this case as a class action pursuant to Mass. Gen. L. c. 149 § 150;

2.  A declaratory judgment that Plaintiff and the Class are employees, not independent contractors;

3.  Restitution for all wages and overtime payments that are due to Plaintiff and the Class because of their misclassification as independent contractors;

4.  Restitution for all other benefits of employment due to Plaintiff and the Class to which they are entitled as employees;

5.  Statutory trebling of all wage-related damages;

18

6. Attorneys' fees and costs; and

7. Any other relief to which the Plaintiff and Class members may be entitled.

                Respectfully Submitted,

                JAY STEINMETZ, *et al.,* Plaintiffs
                By their attorneys,

                Harold L. Lichten BBO#549689
                Shannon Liss-Riordan BBO#640716
                Ian O. Russell BBO#673387
                LICHTEN & LISS-RIORDAN, P.C.
                100 Cambridge Street, 20th Floor
                Boston, MA 02114
                (617) 994-5800

Dated:  October 29, 2010

**Commonwealth of Massachusetts**
**County of Middlesex**
**The Superior Court**

CIVIL DOCKET # **MICV2010-04168-F**

**Courtroom Civil F - Ct Rm 510- 200 TradeCenter, Woburn**

RE:   **Steinmetz, Individually And On Behalf Of All Others Similarly v Beavex Incorporated et al**

TO:   Harold L Lichten, Esquire
Lichten & Liss-Riordan, P.C.
100 Cambridge Street
20th floor
Boston, MA 02114

RECEIVED NOV 0 9 2010

## SCHEDULING ORDER FOR A TRACK

You are hereby notified that this case is on the track referenced above as per Superior Court Standing Order 1-88. The order requires that the various stages of litigation described below must be completed not later than the deadlines indicated, and case shall be resolved and judgment shall issue by **10/18/2013**

| STAGES OF LITIGATION | SERVED BY | FILED BY | HEARD BY |
|---|---|---|---|
| Service of process made and return filed with the Court | 02/01/2011 | 02/01/2011 | |
| Response to the complaint filed (also see MRCP 12) | | 03/03/2011 | |
| All motions under MRCP 12, 19, and 20 | 03/03/2011 | 04/02/2011 | 05/02/2011 |
| All motions under MRCP 15 | 12/28/2011 | 01/27/2012 | 01/27/2012 |
| All discovery requests **and depositions** served and non-expert depositions completed | 10/23/2012 | | |
| All motions under MRCP 56 | 11/22/2012 | 12/22/2012 | |
| Final pre-trial conference held and/or firm trial date set | | | 04/21/2013 |
| Case shall be resolved and judgment shall issue by **10/18/2013** | | | **10/18/2013** |

- The final pre-trial deadline is not the scheduled date of the conference.
- You will be notified of that date at a later time.
- Counsel for plaintiff must serve this tracking order on defendant before the deadline for filing return of service.

Dated: 11/05/2010

Telephone: 781-939-2769

Michael A. Sullivan
Clerk of the Court

Disabled individuals who need handicap accommodations should contact the Administrative Office of the Superior Court at (617) 788-8130 --Check website as to status of case: http://ma-trialcourts.org/tcic   3612780.inidoc01 dipacee